**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
CHARLESTON DIVISION**

| | | |
|---|---|---|
| Roy M. Thompson and Jennifer Thompson, on behalf of themselves and all others similarly situated, | ) ) ) ) | |
| Plaintiffs, | ) ) | |
| vs. | ) ) | Civil Action No. 2:24-cv-02075-RMG |
| CalAtlantic Group, LLC and Lennar Corporation, | ) ) ) ) | |
| Defendants. | ) ) | |
| _____ | ) | |

**DEFENDANTS' MEMORANDUM IN SUPPORT OF
DEFENDANTS' MOTION TO STAY AND MOTION TO DISMISS AND COMPEL
ALTERNATIVE DISPUTE RESOLUTION OR, IN THE ALTERNATIVE,
<u>MOTION TO DISMISS PURSUANT TO RULE 12(B)(6)</u>**

**TABLE OF CONTENTS**

I.    INTRODUCTION………………………………………………………………...1

II.   BACKGROUND……………………………………………………………………2

III.  PROCEDURAL HISTORY………………………………………………………..5

IV.   LEGAL STANDARD……………………………………………………………….6

      A.   Compelling Arbitration……………………………………………………6

      B.   Dismissal under Rule 12(b)(6)…………………………………………….6

V.    ARGUMENT AND AUTHORITIES……………………………………………..8

      A.   A Stay Is Appropriate Because Plaintiffs Have Failed to Comply
           with the Right to Cure Act……………………………………………..….8

      B.   This Court Should Dismiss the Case and Compel Mediation and
           Arbitration Under the FAA or, Alternatively, the SCUAA………………………11

           1.   The FAA Governs the Enforceability of the Declaration's
                ADR Provisions………………………………………………………….11

                a.   A Dispute Exists Between Plaintiffs and Defendants……………11

                b.   There is a Written Agreement with an Arbitration
                     Provision Covering the Dispute Between Plaintiffs
                     and Defendants………………………………………………..12

                     i.    The Declaration's ADR Provisions Cover the Dispute….12

                     ii.   The PSA is a Written Contract…………………….……13

                     iii.  The Declaration's Arbitration Clause is Analogous
                           to the One Found Enforceable in Roberson v.
                           Cliffs Communities, Inc…………………………..……..14

                     iv.   The Mediation and Arbitration Clauses in the
                           Declaration Are Also Enforceable as Duly
                           Recorded Covenants of Which Plaintiffs Had
                           Notice When They Purchased the House……………….16

                c.   The Arbitration Clause Involves Interstate Commerce…………17

i

          d.        Plaintiffs Failed to Mediate and Arbitrate the Dispute
                   Prior to Initiating Litigation…………………………………..18

      2.      Alternatively, Plaintiffs' Claims are Subject to Arbitration
           Under the SCUAA…………………………………………………18

      3.      Because the Declaration's ADR Provisions are Enforceable
           Under the FAA and the SCUAA, this Court Must Compel
           Mediation and Either Dismiss or Stay the Lawsuit……………………..20

   C.     Alternatively, the Court Should Dismiss Plaintiffs' Breach of Contract
        Claim against Lennar, Dismiss in Part the Breach of Contract Claim
        against CalAtlantic, and Dismiss the SCUTPA Claim Altogether………………21

      1.      Breach of Contract…………………………………………………..………..21

      2.      SCUTPA……………………………………………………………………….23

VI.    CONCLUSION………………………………………………………………………..25

## TABLE OF AUTHORITIES

**Cases**

Allied-Bruce Terminix Cos., Inc. v. Dobson, 513 U.S. 265 (1995) ............................................... 17

Ameristone Tile, LLC v. Ceramic Consulting Corp., Inc., 966 F. Supp. 2d 604 (D.S.C.
    2013) ....................................................................................................................................... 24

Arceneaux v. Arrington, 284 S.C. 500, 327 S.E.2d 357 (S.C. Ct. App. 1976)............................ 16

Ardis v. Cox, 314 S.C. 512, 431 S.E.2d 267 (S.C. Ct. App. 1993) .............................................. 23

Ashcroft v. Iqbal, 556 U.S. 662 (2009)..................................................................................... 7, 24

AT&T Mobility LLC v. Concepcion, 563 U.S. 333 (2011) ............................................................. 6

Becker v. Chandler Oaks, LLC, C/A No. 7:18-cv-670-TMC, 2019 WL 7761728 (D.S.C.
    June 11, 2019)............................................................................................................. 21, 22, 24

Bell Atl. Corp. v. Twombly, 550 U.S. 544 (2007) ......................................................................... 7

Berkeley Cty. Sch. Dist. v. Hub Int'l Ltd., 944 F.3d 225 (4th Cir. 2019)...................................... 13

Bernstein v. Pulte Home Co., LLC, C/A No. 0:19-cv-02805-JFA, 2019 WL 8014404
    (D.S.C. Dec. 23, 2019)............................................................................................................ 10

Blankenship v. Manchin, 471 F.3d 523 (4th Cir. 2006))................................................................ 8

Bradley v. Brentwood Homes, Inc., 398 S.C. 447, 730 S.E.2d 312 (S.C. 2012) ........................ 18

Carlson v. S.C. Plastering, LLC, 404 S.C. 250, 743 S.E.2d 868 (S.C. 2013).............................. 10

Circle Square Co. v. Atlantis Dev. Co., 267 S.C. 618, 230 S.E.2d 704 (S.C. 1976) ................... 16

Daisy Outdoor Advert. Co., Inc. v. Abbott, 322 S.C. 489 S.E.2d 47 (S.C. 1996)........................ 23

E. Shore Mkts., Inc. v. J.D. Assocs. Ltd. P'ship, 213 F.3d 175 (4th Cir. 2000)............................ 7

Edwards v. City of Goldsboro, 178 F.3d 231 (4th Cir. 1999) ....................................................... 6

Episcopal Hous. Corp. v. Fed. Ins. Co., 269 S.C. 631, 239 S.E.2d 647 (S.C. 1977) .................. 18

Ethox Chem., LLC v. Coca-Cola Co., No. 6:12–cv–01682–TMC, 2013 WL 41001
    (D.S.C. Jan. 3, 2013)............................................................................................................... 24

Ferguson v. Waffle House, Inc., 18 F. Supp. 3d 705 (D.S.C. 2014) ...................................... 21, 22

First Baptist Church v. George A. Creed & Son, Inc., 276 S.C. 597, 281 S.E.2d 121 (S.C. 1981) .................................................................................................................. 13, 14

First Fed. Sav. & Loan Ass'n of Charleston v. Bailey, 316 S.C. 350, 450 S.E.2d 77 (S.C. Ct. App. 1994) ......................................................................................................... 16

Flinkingshelt v. Johnson, 258 S.C. 77, 187 S.E.2d 233 (S.C. 1972) ........................................... 17

Ghouri v. AmSher Collection Servs., 2022 U.S. Dist. LEXIS 191652, 2022 WL 11964565 (E.D. Va. Oct. 19, 2022)..................................................................................... 17

Grazia v. S.C. State Plastering, LLC, 390 S.C. 562, 703 S.E.2d 197 (S.C. 2010) ............... 8, 9, 10

Green Tree Fin. Corp.-Ala. v. Randolph, 531 U.S. 79 (2000)........................................................ 6

Hall v. Virginia, 385 F.3d 421 (4th Cir. 2004) .................................................................. 8

Havird Oil Co., Inc. v. Marathon Oil Co., Inc., 149 F.3d 283 (4th Cir. 1998) ............................ 23

Heffner v. Destiny, Inc., 321 S.C. 536, 471 S.E.2d 135 (S.C. 1995) ............................................ 6

Hill v. Peoplesoft USA, Inc., 412 F.3d 540, 543 (4th Cir. 2005) ...................................... 13

Hoffer v. Wyndham Vacation Resorts, Inc., 2022 U.S. Dist. LEXIS 237742, 2022 WL 18587633 (D.S.C. Nov. 16, 2022) ......................................................................................11

Home Fin., LLC v. Risher, 405 S.C. 202, 746 S.E.2d 471 (S.C. Ct. App. 2013) ........................ 14

Irby v. Southern Mgmt. Corp., 2021 U.S. Dist. LEXIS 194439, 2021 WL 4711297 (D.S.C. Oct. 8. 2021)................................................................................................................ 18

Kelly, 2020 WL 12770818 ................................................................................................ 10

Kindred Nursing Ctrs. Ltd. P'ship v. Clark, 581 U.S. 246 (2017) ................................................ 6

Kollmann v. Carolina Sports Clinic – Fort Mill LLC, C/A No. 0:21-cv-03015-DCC, 2022 WL 4586401 (D.S.C. Sept. 29, 2022)................................................................ 18, 20

Liberty Corp. Capital Ltd. v. Palmetto Bluff Shooting Club, LLC, C/A No. 9:19-cv-00521-SAL, 2021 WL 3828682 (D.S.C. Aug. 24, 2021) ....................................................... 22

Lucas v. United Parcel Serv., Inc., C/A No. 3:21-cv-02328-SAL, 2022 WL 4533787 (D.S.C. Sept. 2, 2022)............................................................................................... 8

McDonald v. Welborn, 220 S.C. 10, 66 S.E.2d 327 (S.C. 1951) .................................................. 17

Michael v. Kiawah Island Real Est., LLC, Civil Action No. 2:11–cv–2709–RMG, 2012
    WL 13002172 (D.S.C. Apr. 20, 2012)........................................................................................ 8

Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp., 460 U.S. 1 (1983) ................................ 6

Noack Enters., Inc. v. Country Corner Interiors, Inc., 290 S.C. 475, 351 S.E.2d 347 (S.C.
    Ct. App. 1986) ......................................................................................................................... 24

O'Neill v. Hilton Head Hosp., 115 F.3d 272 (4th Cir. 1997)) ...................................................... 6

Palmetto Assisted Living Sys., Inc. v. KeyBank Nat'l Ass'n, C/A No. 3:18-cv-2665-
    CMC, 2019 WL 1865351 (D.S.C. Apr. 25, 2019)................................................................... 23

Palmetto Dunes Resort, Div. of Greenwood Dev. Corp. v. Brown, 287 S.C. 1, 6, 336
    S.E.2d 15 (S.C. Ct. App. 1985)................................................................................................ 17

Philips v. Pitt Cty. Mem'l Hosp., 572 F.3d 176 (4th Cir. 2009)..................................................... 8

Rent-A-Center, W., Inc. v. Jackson, 561 U.S. 63 (2010) ........................................................ 12, 21

Roberson v. Cliff Communities, Inc., C.A. No. 6:09–2701–HMH, 2010 WL 2721030
    (D.S.C. July 8, 2010) .................................................................................................. 12, 14, 15, 16

Rota-McLarty v. Santander Consumer USA, Inc., 700 F.3d 690 (4th Cir. 2012)........................ 17

Rowland v. Sandy Morris Fin. & Estate Plan. Servs., LLC, 993 F.3d 253 (4th Cir. 2021) ............ 13

Smith v. Comm'rs of Pub. Works, 312 S.C. 460, 441 S.E.2d 331 (S.C. Ct. App. 1994)............. 16

Soil Remediation Co. v. Nu-Way Envtl., Inc., 323 S.C. 454, 476 S.E.2d 149 (S.C. 1996) ......... 19

Spires v. Schools, 271 F. Supp. 3d 795 (D.S.C. 2017) ................................................................. 7

Sports Med Props., LLC v. Talib, DOCKET NO. 3:19-cv-00082-FDW-DSC, 2019 WL
    3403372 (W.D.N.C. July 26, 2019)......................................................................................... 22

Towles v. United HealthCare Corp., 338 S.C. 29, 524 S.E.2d 839 (S.C. Ct. App. 1999)........ 6, 19

Trancik v. USAA Ins. Co., 581 S.E.2d 858 (S.C. Ct. App. 2003)............................................... 21

United States v. Bankers Ins. Co., 245 F.3d 315 (4th Cir. 2001)……………………………….20

Weber v. Bank of Am. NA, C/A No. 0:13–cv–01999–JFA, 2013 WL 4820446 (D.S.C.
    Sept. 10, 2013) ........................................................................................................................ 24

Whiteside v. Teltech Corp., 940 F.2d 99 (4th Cir. 1991) ................................................11

Williams v. Preiss-Wal Pat III, LLC, 17 F. Supp. 3d 528 (D.S.C. 2014)...................................... 7

Williams v. Quest Diagnostics, Inc., 353 F. Supp. 3d 432 (D.S.C. 2018).................................. 23

Yusenko v. Lennar Corp., C/A No. 0:09–2395–JFA, 2009 WL 4799556 (D.S.C. Dec. 4, 2009) ......................................................................................................... 9, 10

## Statutes

9 U.S.C. § 2.........................................................................................................................6, 11

Fed. R. Civ. P. 8(a)(2)........................................................................................................... 7

Fed. R. Civ. P. 10(c) ............................................................................................................. 8

Federal Arbitration Act, 9 U.S.C. §§ 1 through 16.......................................................... 1

S.C. Code § 15-48-10................................................................................................ 3, 6, 19

S.C. Code § 39-5-20(a) ....................................................................................................... 23

S.C. Code § 40-59-830......................................................................................................... 10

S.C. Code § 40-59-840......................................................................................................... 9

South Carolina Unfair Trade Practices Act, S.C. Code §§ 39-5-10 through 180 .......................... 2

South Carolina Uniform Arbitration Act, S.C. Code §§ 15-48-10 through 240............................. 1

## I.    INTRODUCTION

Defendants CalAtlantic Group, LLC ("CalAtlantic") and Lennar Carolinas, LLC, incorrectly named in the Complaint as "Lennar Corporation" ("Lennar," and together with CalAtlantic, the "Defendants"), by and through their undersigned counsel, respectfully submit this Memorandum in Support of Defendants' Motion to Stay and Motion to Dismiss and Compel Alternative Dispute Resolution or, in the Alternative, Motion to Dismiss Pursuant to Rule 12(b)(6).

As set forth more fully herein, the Court should stay this case because Plaintiffs failed to comply with the South Carolina Notice and Opportunity to Cure Construction Dwelling Defects Act, S.C. Code §§ 40-59-810 through 860 (the "Right to Cure Act").  The Court should also dismiss this case and compel the parties to engage in alternative dispute resolution ("ADR") because Plaintiffs failed to mediate and arbitrate their claims as required by (1) the applicable provisions of the Amended and Restated Declaration of Covenants, Conditions, and Restrictions for Limehouse (the "Declaration"), which was incorporated into Plaintiffs' Purchase and Sale Agreement; (2) the Federal Arbitration Act, 9 U.S.C. §§ 1 through 16 (the "FAA"); and (3) the South Carolina Uniform Arbitration Act, S.C. Code §§ 15-48-10 through 240 (the "SCUAA"). These procedural defects, which violate the parties' substantive contractual and legal rights and obligations, warrant an immediate stay of the case to ensure Plaintiffs' compliance the Right to Cure Act and, if such precondition is met, a dismissal of the case and order compelling mediation and arbitration—exercises that, by design, may very well obviate the need for this litigation.

Alternatively, the Court should dismiss (1) Plaintiffs' breach of contract claim against Lennar because there is no contract between Lennar and Plaintiffs; (2)  Plaintiffs' breach of contract claim as to CalAtlantic because the alleged contractual provision cited by Plaintiffs does not exist; and (3) Plaintiffs' cause of action under the South Carolina Unfair Trade Practices Act, S.C. Code §§ 39-5-10 through 180 ("SCUTPA") because there is no cognizable SCUTPA claim

1

where, as here, there is no well-pleaded allegation showing an adverse impact on the public interest—an essential element of a SCUTPA claim.

## II.   BACKGROUND

Plaintiffs Roy M. Thompson ("Roy Thompson") and Jennifer Thompson (together, "Plaintiffs") own a single-family residence (the "House") located at 162 Red Bluff Street, Summerville, South Carolina, within the master-planned community known as Limehouse Village. (Compl. ¶ 1, ECF No. 1-1). Plaintiffs have filed this putative class action on behalf of themselves and all others similarly situated, alleging the House's second floor is "sagging and uneven in places . . . due to an improper I-joist running the length of the second floor." (Compl. ¶¶ 8, 10).

On July 28, 2022, Plaintiffs executed a Purchase and Sale Agreement and several addenda, including a Master Disclosure and Information Addendum to Purchase and Sale Agreement (the "Master Disclosure Addendum") (collectively, the "PSA") with CalAtlantic to purchase the House for a total purchase price of $413,485.00, closing on the House on or about October 17, 2022. (Compl. ¶¶ 6–7; Petras Aff. and Ex. 1 (PSA), <u>attached collectively as</u> **Exhibit A**)).[1]

As homeowners in Limehouse Village, Plaintiffs are bound by the community's governing documents, including the Declaration, which was duly executed on October 9, 2013, and recorded in the Dorchester County Register of Deeds Office on November 13, 2013, prior to Plaintiffs' purchase of the House. (Declaration, <u>attached hereto as</u> **Exhibit B**). At the time of the purchase, Plaintiffs had actual and constructive knowledge of the Declaration and, therefore, purchased their rights, title, and interest in the House subject to the Declaration's terms and conditions. Moreover,

---

[1] Personal identifying information in the PSA has been redacted in compliance with Rule 5.2, FRCP.

the Declaration, including its mandatory ADR provisions set forth below, was expressly

incorporated into the PSA pursuant to the terms of the Master Disclosure Addendum:

> Buyer acknowledges receipt of, and <u>agrees to be bound by the Amended and Restated Declaration of Covenants, Conditions and Restrictions for Limehouse</u> recorded in Book 9083, Page 96 in the Dorchester County Register of Deeds (as may be amended, the "Declaration"), the Articles of Incorporation, By-Laws and any Rules and Regulations of Limehouse Village Homeowners' Association, Inc., all as amended and supplemented from time to time (collectively, the "Community Documents"). <u>Buyer acknowledges and agrees that title to the Home will be subject to the Community Documents</u>.

(Master Disclosure Addendum ¶ 3.1, Petras Aff. Ex. 1 (PSA) (emphases added)).

The Declaration provides a governance structure and system of standards and procedures

for the development, expansion, use, administration, and maintenance of residential properties

within Limehouse Village. (<u>See generally</u> Preamble, Declaration 1). Properties subject to the

terms and conditions of the Declaration are described in Exhibit A attached to and incorporated

into the Declaration and includes the House, such that Plaintiffs are bound by the Declaration as

owners of the House. (Ex. A to Declaration).

The Declaration contains the following notice on the top of the first page in typed in

underlined capital letters, in compliance with S.C. Code § 15-48-10(a) of the SCUAA:

> <u>**PORTIONS OF THIS AGREEMENT ARE SUBJECT TO ARBITRATION PURSUANT TO THE SOUTH CAROLINA UNIFORM ARBITRATION ACT, 15-48-10, S.C. CODE OF LAWS OF 1976, AS AMENDED.**</u>

(Declaration Cover Page). Significantly, Article 14 of the Declaration, titled "Alternative Dispute

Resolution & Litigation," sets forth the parameters by which parties subject to the Declaration

must submit certain claims to mediation and binding arbitration. (Art. 14, Declaration). Article

14.1 provides:

The Declarant[2], Association, and Owners[3] (collectively, the "Parties" and singularly, a "Party"), agree that any dispute, controversy or claim among them, including counterclaims and crossclaims, whether based upon contract, tort, common law or otherwise (collectively, a "Dispute"), arising from or relating directly or indirectly to . . . the Development . . . except for "Exempt Claims" under Section 14.2, are subject to arbitration, as defined under South Carolina law and the Federal Arbitration Act, in lieu of civil proceedings and governed by the procedures set forth in Section 14.3.[4]

(Declaration § 14.1). Article 14.2 lists six types of claims exempt from mediation and binding arbitration, none of which are applicable here. (Declaration § 14.2). Article 14.3 details the mandatory ADR procedures for non-exempt claims, including the mandate that, "[a]ny Party having a Claim ('Claimant') against another Party involving . . . the Development . . . will not file suit in any court . . . until it has complied with these alternative dispute provisions[.]" (Declaration § 14.3).

Article 14.3(c) requires Plaintiffs to submit to mandatory and binding arbitration, after a mandatory mediation (the "Arbitration Clause"), providing:

Any Dispute that cannot be settled by negotiation or mediation shall be settled by binding arbitration before a single arbitrator, mutually agreed upon by the Parties, who is an attorney with substantial experience in the subject matter of the Dispute. Arbitration will be governed by the commercial or construction arbitration rules of the American Arbitration Association (AAA), whichever is applicable, but will not be administered by the AAA unless the parties so agree.

---

[2] "Declarant" means "Limehouse Village, LLC, formerly referred to as 'Founder' or any successor-in-title to the entire interest of such person with respect to the Property at the time of such transfer to said successor-in-title, or any party designated Of Record to succeed the rights of Declarant hereunder as to the matters set forth in such writing." (Declaration § 1.1(n)). "In exercising such right . . . granted or reserved to it hereunder, such right . . . shall be deemed to extend to its duly authorized directors, officers, agents, employees and contractors." (Id.).

[3] "Owner" means, in pertinent part, "one or more persons, including Declarant, who or which owns fee simple title to any Unit, its respective heirs, legal representatives, successors, and assigns . . . ." (Declaration § 1.1(ff)).

[4] Additionally, in Article 14.3(a), "[t]he Parties agree to arbitrate all Disputes with each other and with any other person or entity to the extent any or all such other persons and entities have agreed to participate in and be subject to arbitration of all Disputes." (Declaration § 14.3(a)).

(Declaration § 14.3(c)).

The Arbitration Clause covers Plaintiffs, as record owners of the House, which is subject to the Declaration and governs all non-exempt claims Plaintiffs may have against Defendants, including those asserted in this improvidently filed lawsuit.  Pursuant to the Declaration, before a non-exempt claim can be submitted to binding arbitration, Plaintiffs are required to mediate such claims in accordance with Article 15.3(b) (the "Mediation Clause"):

> Prior to arbitration, if the Dispute cannot be settled through direct discussions, the Parties shall endeavor to resolve the Dispute between themselves, by participating in mediation before a mediator mutually agreed upon by the Parties.

(Declaration § 15.3(b)).

Additionally, Article 14.3(e) delegates the issue of whether a dispute is within the scope of the Arbitration Clause to the arbitrator(s) (the "Delegation Clause"):

> The issue of whether or not a Dispute is within the scope of this arbitration requirement (or "arbitrability") will be decided by an arbitrator or arbitrators selected pursuant to the terms of this Article 14.

(Declaration § 14.3(e)).

## III.    PROCEDURAL HISTORY

On March 14, 2024, Plaintiffs improvidently initiated a civil lawsuit in the South Carolina Court of Common Pleas for Dorchester County without complying with the Right to Cure Act or the mandatory and binding ADR procedures set forth in the Declaration and incorporated into the PSA, despite Plaintiffs being bound by the terms of those written agreements.  After Defendants were served with process on March 19, 2024, they timely removed this case to this Court on April 18, 2024, based on diversity jurisdiction.  (See Notice of Removal, ECF No. 1).

## IV.   LEGAL STANDARD

### A.   Compelling Arbitration

Under the FAA and the SCUAA, arbitration agreements are "valid, irrevocable, and enforceable." 9 U.S.C. § 2; S.C. Code § 15-48-10 (same).  "Both federal and state policy favor arbitrating disputes." Towles v. United HealthCare Corp., 338 S.C. 29, 34, 524 S.E.2d 839, 842 (S.C. Ct. App. 1999) (citing Heffner v. Destiny, Inc., 321 S.C. 536, 537, 471 S.E.2d 135, 136 (S.C. 1995)); see also AT&T Mobility LLC v. Concepcion, 563 U.S. 333, 345–46 (2011) (cleaned up) ("[It] is beyond dispute that the FAA was designed to promote arbitration[,]" which "embodies a national policy favoring arbitration[.]"); Kindred Nursing Ctrs. Ltd. P'ship v. Clark, 581 U.S. 246, 248 (2017) (citations omitted) ("The [FAA] requires courts to place arbitration agreements on equal footing with all other contracts.").  Thus, "there is a strong presumption in favor of the validity of arbitration agreements because of the strong policy favoring arbitration." Towles, 338 S.C. at 37, 524 S.E.2d at 844 (citing O'Neill v. Hilton Head Hosp., 115 F.3d 272, 273 (4th Cir. 1997)).

Accordingly, a party resisting arbitration bears the burden of showing that the arbitration agreement is invalid or does not encompass the claims at issue. Green Tree Fin. Corp.-Ala. v. Randolph, 531 U.S. 79, 91–92 (2000).  "[A]ny doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration, whether the problem at hand is the construction of the contract language itself or an allegation of waiver, delay, or a like defense to arbitrability." Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp., 460 U.S. 1, 24–25 (1983).

### B.   Dismissal under Rule 12(b)(6)

A Rule 12(b)(6) motion to dismiss "test[s] the sufficiency of a complaint." Edwards v. City of Goldsboro, 178 F.3d 231, 243 (4th Cir. 1999).  The Court measures the sufficiency of a

complaint with Rule 8(a), which requires a complaint to contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). "Although Rule 8(a) does not require 'detailed factual allegations,' it requires 'more than an unadorned, the defendant-unlawfully-harmed-me accusation in order to 'give the defendant fair notice of what the . . . claim is and the grounds upon which it rests." Williams v. Preiss-Wal Pat III, LLC, 17 F. Supp. 3d 528, 531 (D.S.C. 2014) (quoting Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009); Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007)). "In other words, 'a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face.'" Id. (quoting Iqbal, 556 U.S. at 678). "A claim is facially plausible 'when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.'" Id. (quoting Iqbal, 556 U.S. at 678). "A complaint alleging facts that are 'merely consistent with a defendant's liability . . . stops short of the line between possibility and plausibility of entitlement to relief.'" Id. at 531–32 (quoting Iqbal, 556 U.S. at 678).

While the Court "must accept the plaintiff's factual allegations as true, any conclusory allegations are not entitled to an assumption of truth, and even those allegations pled with factual support need only be accepted to the extent that 'they plausibly give rise to an entitlement to relief.'" Id. (quoting Iqbal, 556 U.S. at 679); see also E. Shore Mkts., Inc. v. J.D. Assocs. Ltd. P'ship, 213 F.3d 175, 180 (4th Cir. 2000) (a district court "need not accept as true unwarranted inferences, unreasonable conclusions, or arguments"); Spires v. Schools, 271 F. Supp. 3d 795, 800 (D.S.C. 2017) (quoting Iqbal, 556 U.S. at 678) ("[T]he complaint must show more than a 'sheer possibility that a defendant has acted unlawfully.'").

Importantly, in deciding a motion to dismiss, the Court may properly "take judicial notice of matters of public record" and "consider documents attached to the complaint as well as those

7

attached to the motion to dismiss, so long as they are integral to the complaint and authentic."[5]

Philips v. Pitt Cty. Mem'l Hosp., 572 F.3d 176, 180 (4th Cir. 2009) (citing Hall v. Virginia, 385

F.3d 421, 424 (4th Cir. 2004); Fed. R. Civ. P. 10(c); Blankenship v. Manchin, 471 F.3d 523, 526

n.1 (4th Cir. 2006)); see also Michael v. Kiawah Island Real Est., LLC, Civil Action No. 2:11–cv–

2709–RMG, 2012 WL 13002172, at *4 n.7 (D.S.C. Apr. 20, 2012) (citation omitted) (considering

deed on a motion to dismiss because deed was a matter of public record of which the court may

take judicial notice and a "source[] courts ordinarily examine when ruling Rule 12(b)(6) motions

to dismiss").  In other words, if a complaint relies on "any documents attached to a [d]efendant's

dismissal motion, and those documents are integral to their claims, the court may properly consider

them so long as they are authentic."  Lucas, 2022 WL 4533787, at *4.

## V.    ARGUMENT AND AUTHORITIES

### A.    A Stay Is Appropriate Because Plaintiffs Have Failed to Comply with the Right to Cure Act.

The purpose of the Right to Cure Act is to encourage the resolution of construction defect

"claims   without   using   litigation,   by   providing   an   environment   that   codifies   a

contractor/subcontractor's ability to inspect and offer a remedy or settlement."  Grazia v. S.C. State

Plastering, LLC, 390 S.C. 562, 575, 703 S.E.2d 197, 203 (S.C. 2010).  The Right to Cure Act has

---

[5] The rationale behind this exception is that "when plaintiffs have actual notice of all the information in the movant's papers and [have] relied upon these documents in framing the complaint as a necessity of translating a [dismissal motion] into one under Rule 56 is largely dissipated."  Lucas v. United Parcel Serv., Inc., C/A No. 3:21-cv-02328-SAL, 2022 WL 4533787, at *4 (D.S.C. Sept. 2, 2022) (alterations in original) (citation omitted).  "Particularly, when plaintiffs fail to include matters of which as pleaders they had notice and which were integral to their claim, such a failure may not serve as a means of forestalling the district court's decision on the motion."  Id. (citations omitted).  "If a court were to forego consideration of a relied upon, but not explicitly included document a plaintiff with a legally deficient claim could survive a motion to dismiss simply by failing to attach a dispositive document on which it relied."  Id. (citation omitted).

an "express public policy intent of: (1) addressing the need for an alternative dispute resolution method to promote settlement of construction disputes without litigation, while adequately protecting the rights of homeowners; and (2) requiring a would-be plaintiff in certain construction defect matters to file a notice of claim with the would-be defendant and provide an opportunity to resolve the claim without litigation." Id., 390 S.C. at 572, 703 S.E.2d at 202.

The Right to Cure Act provides a specific timeline and procedure for claims falling within its purview.  Pursuant to Section 40-59-840, for "an action brought against a contractor or subcontractor arising out of the construction of a dwelling," the claimant "must, no later than ninety days before filing the action, serve a written notice of claim on the contractor." S.C. Code § 40-59-840; see also Yusenko v. Lennar Corp., C/A No. 0:09–2395–JFA, 2009 WL 4799556, at *1 (D.S.C. Dec. 4, 2009) ("Under the [Right to Cure] Act, plaintiffs asserting defective construction of their dwelling must give specific written notice to any contractor or subcontractor against whom a claim is sought at least ninety days prior to filing suit.").  The notice must contain "(1) a statement that the claimant asserts a construction defect; (2) a description of the claim or claims in reasonable detail sufficient to determine the general nature of the construction defect; and (3) a description of any results of the defect, if known." S.C. Code § 40-59-840.

In the present case, Plaintiffs have failed to provide Defendants with the written notice required by the Right to Cure Act, thereby denying Defendants the opportunity to investigate and potentially resolve Plaintiffs' claims without necessitating protracted and costly litigation.  (See Petras Aff. ¶ 6).  When a claimant fails to comply with the Right to Cure Act, as here, the appropriate remedy is a mandatory stay of the case.  Section 40-59-830 provides, "[i]f a claimant files an action in court before first complying with the requirements of this article, on motion of a party to the action, the court shall stay the action until the claimant has complied with the

9

requirements of this article."  S.C. Code § 40-59-830 (emphasis added); see also Yusenko, 2009 WL 4799556, at *1 (emphasis added) ("If the claimant files an action in court before first complying with the requirements of the [Right to Cure Act], the court must stay the case until the claimant has complied[.]"); Grazia, 390 S.C. at 572, 703 S.E.2d at 202 (stating the South Carolina General Assembly "included a stay provision in the Right to Cure Act to specifically address situations where claimants file an action prior to full compliance with the notice provisions").

The Right to Cure Act's directive to stay the case is mandatory, and courts have routinely ordered a stay where non-compliance with the statute has been shown. See, e.g., Yusenko, 2009 WL 4799556, at *1 (granting motion to stay and ordering plaintiffs to "immediately comply with the notice requirements of S.C. Code Ann. § 40-59-840" and staying the case for ninety days after which the parties were to "inform the court of the status of the case by means of a filing on the docket"); Kelly, 2020 WL 12770818, at *2 (granting motion to stay and ordering plaintiffs to "immediately comply with the notice requirements of the Cure Act" and staying the case for ninety days after which the partiers were to "inform the Court of the status by filing a status report on the docket"); see also Carlson v. S.C. Plastering, LLC, 404 S.C. 250, 255, 743 S.E.2d 868, 871 (S.C. 2013) (staying case for non-compliance with the Right to Cure Act); Bernstein v. Pulte Home Co., LLC, C/A No. 0:19-cv-02805-JFA, 2019 WL 8014404, at *5 (D.S.C. Dec. 23, 2019) (staying non-arbitrable claims under the Right to Cure Act).  In light of Plaintiffs' non-compliance with the Right to Cure Act, the Court must stay the case and order Plaintiffs to comply with their statutory obligations.

**B.      This Court Should Dismiss the Case and Compel Mediation and Arbitration Under the FAA or, Alternatively, the SCUAA.[6]**

    **1.      The FAA Governs the Enforceability of the Declaration's ADR Provisions.**

The FAA governs written contracts to arbitrate that "evidenc[e] a transaction involving commerce . . . ." 9 U.S.C. § 2. Under the FAA, a court must dismiss or stay a case and compel arbitration when the following elements are shown: "(1) the existence of a dispute between the parties, (2) a written agreement that includes an arbitration provision which purports to cover the dispute, (3) the relationship of the transaction, which is evidenced by the agreement, to interstate or foreign commerce, and (4) the failure, neglect or refusal of [a party] to arbitrate the dispute." Whiteside v. Teltech Corp., 940 F.2d 99, 102 (4th Cir. 1991) (citation omitted). Here, all of the FAA's requisite elements are satisfied.

    a.      A Dispute Exists Between Plaintiffs and Defendants.

As evidenced by the allegations in the Complaint, a dispute plainly exists among Plaintiffs and Defendants. (Compl. ¶¶ 8–10). Plaintiffs have initiated litigation against Defendants, alleging the House's second floor is "sagging and uneven in places . . . due to an improper I-joist running the length of the second floor." (Compl. ¶¶ 8, 10). Plaintiffs have asserted various causes of action, including breach of contract, negligence, and breach of warranty, and have prayed for "actual, incidental, consequential, special, and punitive damages in an amount to be determined by the trier of fact." (Compl. ¶ 50). Plaintiffs' lawsuit and the allegations therein, which are disputed, clearly satisfy the FAA's first element. See Hoffer v. Wyndham Vacation Resorts, Inc., 2022 U.S. Dist. LEXIS 237742, *5-6, 2022 WL 18587633 (D.S.C. Nov. 16, 2022) ("Defendant

---

[6] The Court's order compelling mediation and arbitration should be conditioned on Plaintiffs' compliance with the Right to Cure Act because Plaintiff's compliance is a prerequisite to the initiation of the ADR procedures set forth in the Declaration.

has established there is a dispute between the parties as [plaintiff] has filed a complaint with eleven causes of action.")).

   b. <u>There is a Written Agreement with an Arbitration Provision Covering the Dispute Between Plaintiffs and Defendants.</u>

     i. *The Declaration's ADR Provisions Cover the Dispute.*

Plaintiffs' causes of action also fall within the purview of the ADR provisions in the Declaration (a written agreement), which was incorporated by reference into the PSA (another written agreement). Article 14 of the Declaration provides that the Arbitration Clause and Mediation Clause apply to "any dispute, controversy or claim . . . including counterclaims and crossclaims, whether based upon contract, tort, statute, common law or otherwise . . . arising from or relating directly or indirectly to the Declaration or the Development." (Declaration ¶ 14.1). Plaintiffs' claims arise from and relate directly to the House because Plaintiffs claim a construction defect allegedly emanating from the I-joist in the House. Plaintiffs' claims for breach of contract, negligence/gross negligence/recklessness, breach of warranty, and violation of SCUTPA, as well as the damages they seek in connection with those claims, are directly related to the House. <u>See</u> <u>Roberson</u>, 2010 WL 2721030, at *4 (holding plaintiff's "allegations [of fraud, negligent misrepresentation, violation of the SCUTPA, etc.] deal[t] directly with the Development, The Cliffs, and its failure to develop the property as promised" and, therefore, fell within the scope of the arbitration clause). Moreover, none of Plaintiffs' claims are "Exempt Claims," as that term is defined in the Declaration. (Declaration ¶ 14.2). Further, in the event Plaintiffs argue their claims fall outside the scope of the Arbitration Clause, the Delegation Clause clearly and unambiguously delegates the issues of "arbitrability" to the arbitrator(s). (Declaration § 14.3(e)); <u>see</u> <u>Rent-A-Center, W., Inc. v. Jackson</u>, 561 U.S. 63, 68–69 (2010) ("We have recognized that parties can agree to arbitrate 'gateway' questions of 'arbitrability,' such as whether the parties have agreed to arbitrate

12

or whether their agreement covers a particular controversy."). Accordingly, the parties have agreed to have an arbitrator(s), as opposed to this Court, decide the threshold issue of whether Plaintiffs' claims are subject to arbitration.

        ii.       *The PSA is a Written Contract.*

In addition to the Declaration's ADR provisions plainly covering the dispute between the parties, the PSA executed by Plaintiffs upon purchase of the House constitutes a written agreement within the meaning of the FAA and under South Carolina law. (Petras Aff. ¶ 9 and Ex. 1 (PSA)). "Whether an agreement to arbitrate was formed is a question of 'ordinary state-law principles. . . .'" Rowland v. Sandy Morris Fin. & Estate Plan. Servs., LLC, 993 F.3d 253, 257 (4th Cir. 2021) (quoting Hill v. Peoplesoft USA, Inc., 412 F.3d 540, 543 (4th Cir. 2005)). "Under South Carolina law, a contract is formed between two parties when there is, *inter alia*, 'a mutual manifestation of assent to [its] terms.'" Berkeley Cty. Sch. Dist. v. Hub Int'l Ltd., 944 F.3d 225, 236 (4th Cir. 2019).

The PSA is in writing, signed by the parties, and supported by valuable consideration. It also expressly incorporates the Declaration—another written agreement—and Plaintiffs expressly agreed to be bound by the Declaration's terms, including the Mediation and Arbitration Clauses. (See Master Disclosure Addendum ¶ 3.1, Petras Aff. ¶ 9 and Ex. 1 (PSA)). Significantly, the PSA's incorporation of the Declaration's ADR provisions is not an impediment to enforceability, as the South Carolina Supreme Court made clear in First Baptist Church v. George A. Creed & Son, Inc., 276 S.C. 597, 599, 281 S.E.2d 121, 122–23 (S.C. 1981). There, the parties executed a construction contract which incorporated by reference another contract, the latter of which contained an arbitration clause. In analyzing the enforceability of the arbitration clause, the South Carolina Supreme Court held that "[a]rbitration of disputes arising under a contract may be provided for by reference to outside documents." Id. at 122–23 (citations omitted). The Court

13

stated that "in the absence of a showing of fraud, mistake, unfair dealing or the like, a party to a contract incorporating an arbitration provision cannot escape the obligation of such a provision[.]" Id.

iii.     *The Declaration's Arbitration Clause is Analogous to the One Found Enforceable in Roberson v. Cliffs Communities, Inc.*

This case is analogous to the facts presented in Roberson v. Cliffs Communities, Inc.,[7] where the Court found an arbitration provision in the Declaration of Covenants, Conditions, and Restrictions for the Cliffs at Mountain Park to be valid and enforceable. C.A. No. 6:09–2701–HMH, 2010 WL 2721030 (D.S.C. July 8, 2010). In Roberson, the defendants moved to compel arbitration based, in part, on article 14.1 of the declaration:

> The Declarant, Association, Owners, and any Person not otherwise subject to the Declaration who agree to submit to this ARTICLE (collectively "Bound Parties") agree to encourage the amicable resolution of disputes between and among themselves *involving this Declaration or the Development*, and to avoid the emotional and financial costs of litigation. Accordingly, each Bound Party covenants and agrees that all claims, grievances and disputes (including those in the nature of counterclaims or cross-claims) between Bound Parties *involving the Declaration or the Development*, including  without limitation, claims, grievances or disputes arising out of or relating to the interpretation, application or enforcement thereof (collective "Claims"), except for "Exempt Claims" under Section 14.2, are subject to the procedures set forth in Section 14.3.

2010 WL 2721030, at *3.

The front page of the declaration, which was recorded in the Office of the Register of Deeds of Greenville County, read: **"PORTIONS OF THIS AGREEMENT ARE SUBJECT TO ARBITRATION PURSUANT TO THE SOUTH CAROLINA UNIFORM ARBITRATION**

---

[7] While Roberson is an unreported opinion from the U.S. District Court for the District of South Carolina, the case is cited because the incorporation of the governing documents into the parties' contract—which the Roberson court found valid—is analogous to the situation here. See Chase Home Fin., LLC v. Risher, 405 S.C. 202, 213, 746 S.E.2d 471, 477 (S.C. Ct. App. 2013) ("It is not improper to cite cases from the federal courts as persuasive authority even on a matter litigated in a state court that does not present a federal question.").

14

**ACT."**  Id.  Paragraph 4 of the sales agreement entered into between the plaintiffs and defendants stated, in pertinent part:

> 4.1 The Declaration of Covenants & Property Owners' Association. The Lot will be conveyed *subject to the Declaration . . .* recorded in the Office of Register of Deeds for Greenville County, as the same may be amended from time to time (herein, sometimes referred to as the "Declaration") . . . . *Purchaser hereby acknowledges having received a copy of the Declaration, with appended Bylaws of the Association.*

Id.

The Court held that the plaintiff's claims—the essence of which were complaints about architectural restrictions imposed by the declaration and the failure to provide amenities in the development—dealt directly with the "[declaration] or the Development" and were, thus, arbitrable claims within the scope of the arbitration clause in the declaration. Id. at *5.  The Court also held that the declaration's arbitration clause was incorporated into the parties' sales agreement, which stated that the plaintiffs' lot was conveyed "subject to" the declaration, and that the plaintiffs acknowledged having "received a copy of the [declaration]" which contains the arbitration provision. Id. at *4.

In the present case, the Declaration and the PSA contain nearly identical language. (See Declaration; Petras Aff. Ex. 1 (PSA)).  As with the Roberson declaration, the Declaration here states that the parties agree to arbitrate all claims "arising from or relating directly or indirectly to the Declaration or the Development." (Declaration (emphasis added)).  Additionally, as in Roberson, the Arbitration Clause here was incorporated into the PSA, which states, "Buyer acknowledges receipt of, and agrees to be bound by the [Declaration]" and "acknowledges and agrees that title to the Home will be subject to the Community Documents[,]" and "Buyer acknowledges the provisions . . . are fair and reasonable." (Master Disclosure Addendum ¶¶ 3.1–

15

3.3, Petras Aff. Ex. 1 (PSA)). Accordingly, for the same reasons argued and adopted by the court in Roberson, Plaintiffs are bound by the terms of the Declaration, including those that mandate pre-suit ADR.

Additionally, Plaintiffs have not affirmatively pled that the ADR provisions are invalid or void, nor have they asserted any contractual defenses to the substantive or procedural enforceability of the ADR provisions. As such, the ADR provisions in the Declaration, incorporated by reference into an "outside document" (here, the PSA), are binding and enforceable, and Plaintiffs do not have any procedural or substantive challenges to the enforceability of the ADR provisions, including the Mediation Clause and Arbitration Clause.

      iv.     *The Mediation and Arbitration Clauses in the Declaration Are Also Enforceable as Duly Recorded Covenants of Which Plaintiffs Had Notice When They Purchased the House.*

The ADR provisions contained in the Declaration are additionally enforceable because, standing alone, they are a contractually enforceable restrictive covenant. See, e.g., Smith v. Comm'rs of Pub. Works, 312 S.C. 460, 466, 441 S.E.2d 331, 335 (S.C. Ct. App. 1994) ("Restrictive covenants are commonly created by a declaration of restrictive covenants, which is executed and recorded in the same manner as a deed."); Circle Square Co. v. Atlantis Dev. Co., 267 S.C. 618, 621, 626–27, 230 S.E.2d 704, 704, 707 (S.C. 1976); Arceneaux v. Arrington, 284 S.C. 500, 501–04, 327 S.E.2d 357, 357– 59 (S.C. Ct. App. 1976). Indeed, a "covenant," broadly speaking, is a synonym for a contract. Covenants are contractual in nature and are construed according to general principles of contract construction. First Fed. Sav. & Loan Ass'n of Charleston v. Bailey, 316 S.C. 350, 354, 450 S.E.2d 77, 79 (S.C. Ct. App. 1994) (citation omitted) ("Covenants . . . are contractual in nature and bind the parties to the covenants in the same manner as other contracts."); Palmetto Dunes Resort, Div. of Greenwood Dev. Corp. v. Brown, 287 S.C.

16

1, 6, 336 S.E.2d 15, 18 (S.C. Ct. App. 1985) (same); Hoffman v. Cohen, 262 S.C. 71, 75, 202 S.E.2d 363, 365 (S.C. 1974) (same).

The ADR provisions in the Declaration, which was duly recorded on November 13, 2013, in the Register of Deeds Office of Dorchester County before Plaintiffs purchased the House, is binding on Plaintiffs who, by law, had notice of its terms. See McDonald v. Welborn, 220 S.C. 10, 16, 66 S.E.2d 327, 330 (S.C. 1951) ("The law imputes to a purchaser of real estate notice of the recitals contained in the written instruments forming his chain of title."). Indeed, even when a grantor records an agreement containing restrictions and later executed deeds that did not contain the restrictions, South Carolina courts still uphold the duly recorded restrictions. See, e.g., id. (holding restrictions valid); Flinkingshelt v. Johnson, 258 S.C. 77, 81, 187 S.E.2d 233, 235 (S.C. 1972) (per curiam) (same). Accordingly, Plaintiffs had notice—actual or constructive—of the ADR provisions set forth in the Declaration, which, standing alone, are binding contractual provisions warranting enforcement.

        c.        The Arbitration Clause Involves Interstate Commerce.

The FAA's third requirement is met because the Arbitration Clause is contained in a written contract involving interstate commerce. See generally Ghouri v. AmSher Collection Servs., 2022 U.S. Dist. LEXIS 191652, *13, 2022 WL 11964565 (E.D. Va. Oct. 19, 2022) (quoting Rota-McLarty v. Santander Consumer USA, Inc., 700 F.3d 690, 697 (4th Cir. 2012) ("[T]he FAA does not impose a burden upon the party invoking the FAA to put forth specific evidence proving the interstate nature of the transaction."); see also Allied-Bruce Terminix Cos., Inc. v. Dobson, 513 U.S. 265, 277, 115 S. Ct. 834, 130 L. Ed. 2d 753 (1995) (holding "the FAA's requirement that the contract 'involv[e] commerce' should be broadly construed to "mean a full exercise of constitutional power . . . . signal[ing] [Congress'] intent to exercise [] [its] commerce power to the full").

Here, Plaintiffs' claims necessarily involve interstate commerce because Plaintiffs, who are citizens of South Carolina, purchased the House newly constructed by Defendants, who are citizens of Delaware and Florida.  See Bradley v. Brentwood Homes, Inc., 398 S.C. 447, 458 n.8, 730 S.E.2d 312, 318 n.8 (S.C. 2012) ("[O]ur appellate courts have consistently recognized that contracts for construction are governed by the FAA."); Episcopal Hous. Corp. v. Fed. Ins. Co., 269 S.C. 631, 640, 239 S.E.2d 647, 652 (S.C. 1977) (explaining that contracts requiring the construction of a new building implicate interstate commerce because it would be "virtually impossible" to construct the building "with materials, equipment[,] and supplies all produced and manufactured solely within the State of South Carolina").

        d.        Plaintiffs Failed to Mediate and Arbitrate the Dispute Prior to Initiating Litigation.

Lastly, the record clearly establishes that Plaintiffs failed, neglected, or refused to arbitrate their dispute by improvidently commencing this action and thereby circumventing the ADR provisions in the Declaration.  See Kollmann v. Carolina Sports Clinic – Fort Mill LLC, C/A No. 0:21-cv-03015-DCC, 2022 WL 4586401, at *5 (D.S.C. Sept. 29, 2022) ("[T]he fourth element is satisfied because Plaintiff has refused to arbitrate this action as evidenced by his filing this lawsuit in federal court."); Irby v. Southern Mgmt. Corp., 2021 U.S. Dist. LEXIS 194439, *7, 2021 WL 4711297 (D.S.C. Oct. 8. 2021) (same).  Based on the forgoing, the ADR provisions in the Declaration, incorporated by reference into the PSA, are valid, binding, and enforceable agreements to mediate and arbitrate within the meaning of the FAA, and this Court should compel mediation and arbitration on that basis.

        **2.**        **Alternatively, Plaintiffs' Claims are Subject to Arbitration Under the SCUAA.**

While South Carolina courts have recognized the preemptive effect of the FAA, the SCUAA provides an alternative avenue by which this Court can compel mediation and arbitration

18

should it find the FAA inapplicable.  See Towles, 338 S.C. at 36, 524 S.E.2d at 843 (citing Soil Remediation Co. v. Nu-Way Envtl., Inc., 323 S.C. 454, 459–60, 476 S.E.2d 149, 152 (S.C. 1996)) (noting that when interstate commerce is involved, "the FAA applies and displaces [the SCUAA]").  Like its federal counterpart, the SCUAA requires that parties who are subject to a written arbitration agreement resolve their disputes through arbitration, rather than litigation.  To invoke mandatory arbitration under the SCUAA, the following must be met:  (1) the arbitration agreement must be in writing; (2) the written agreement must state that is subject to arbitration; (3) the written agreement must also state that arbitration shall be conducted pursuant to the SCUAA; (4) these statements must be typed in underlined capital letters, or the must otherwise be rubber-stamped prominently; and (5) these statements must appear on the first page of the agreement.  S.C. Code § 15-48-10(a).

Here, the Declaration's ADR provisions comply with each of these prerequisites.  First, the agreement is in writing.  Second, as discussed above, the agreement states that is subject to arbitration.  Third, the agreement allows arbitration to be conducted under the SCUAA.  (See Declaration ¶ 14.1 (providing that a dispute is "subject to arbitration, as defined by South Carolina law and the Federal Arbitration Act")).  Finally, the following notice is set forth on the first page of the Declaration in typed, underlined, capital letters, in compliance with the SCUAA:

**PORTIONS OF THIS AGREEMENT ARE SUBJECT TO ARBITRATION PURSUANT TO THE SOUTH CAROLINA UNIFORM ARBITRATION ACT, 15-48-10, S.C. CODE OF LAWS OF 1976, AS AMENDED.**

Therefore, even if the FAA does not apply, this matter should be referred for mediation and arbitration pursuant to the SCUAA.

19

**3.**      **Because the Declaration's ADR Provisions are Enforceable Under the FAA and the SCUAA, this Court Must Compel Mediation and Either Dismiss or Stay the Lawsuit.**

Given the enforceability of the Declarations' ADR provisions, this Court is required to dismiss or stay this action and direct the parties to proceed first with mediation followed by arbitration, if necessary, in accordance with the terms of the Declarations. See United States v. Bankers Ins. Co., 245 F.3d 315, 319 (4th Cir. 2001) ("The FAA *requires* a court to stay 'any suit or proceeding' pending arbitration of 'any issue referable to arbitration under an agreement in writing for such arbitration.' This stay-of-litigation provision is *mandatory*. A district court therefore has no choice but to grant a motion to compel arbitration where a valid arbitration agreement exists[.]") (emphasis added)); Declaration § 14.3(b) ("Prior to Arbitration, if the Dispute cannot be settled through direct discussions, the Parties shall endeavor to resolve the Dispute between themselves, by participating in mediation before a mediator mutually agreed upon by the Parties."). Further, because the Mediation Clause is a condition precedent to arbitration per the terms of the Declaration, mediation must be affirmatively ordered by the Court to safeguard Lennar's right to arbitration. See Kollmann, 2022 WL 4586401, at *5 ("[T]he parties are directed to proceed to mediation in accordance with the terms of the Agreement's dispute resolution provision. Should the parties' mediation efforts fail to resolve the dispute, the parties shall proceed to arbitration pursuant to the Agreement.").

**C.    Alternatively, the Court Should Dismiss Plaintiffs' Breach of Contract Claim against Lennar, Dismiss in Part the Breach of Contract Claim against CalAtlantic, and Dismiss the SCUTPA Claim Altogether.[8]**

**1.    Breach of Contract**

A claim for breach of contract is based on a failure to perform a contractual promise without legal excuse. See Ferguson v. Waffle House, Inc., 18 F. Supp. 3d 705, 731 (D.S.C. 2014) (citation omitted) ("Under South Carolina law, in order to prevail on a breach of contract claim, the Plaintiff bears the burden of establishing the existence and terms of the contract, the Defendant's breach of one or more of the contractual terms, and damages resulting from the breach."). Of course, there can be no breach of contract claim against a defendant with whom a plaintiff has no contract. See, e.g., Becker v. Chandler Oaks, LLC, C/A No. 7:18-cv-670-TMC, 2019 WL 7761728, at *3 (D.S.C. June 11, 2019) (citing Trancik v. USAA Ins. Co., 581 S.E.2d 858, 861 (S.C. Ct. App. 2003)) (other citations omitted) ("An individual who is not a party to a contract cannot be held liable for its breach. It is fundamental that a plaintiff cannot maintain a breach of contract claim against a person with whom she did not contract or recover damages resulting from a breach of contract from a person who was not a party to the contact.").

Simply stated, the PSA that Plaintiffs claim was breached by Defendants is a contract between only Plaintiffs and CalAtlantic. (Petras Aff. Ex. 1 (PSA 1)). Lennar is not a party to the

---

[8] Because the Declaration's Delegation Clause delegates the issues of "arbitrability" to the arbitrator(s), the arbitrator(s) maintain(s) exclusive jurisdiction to rule on the substantive deficiencies in Plaintiffs' Complaint and to dismiss several causes of action to remedy those deficiencies. (Declaration § 14.3(e)); see Rent-A-Center, 561 U.S. at 68–69. Notwithstanding the applicability of the Delegation Clause and the enforceability of the Declaration's ADR provisions, however, Defendants set forth its substantive dismissal arguments here in the event its motion to compel mediation and arbitration is denied.

21

PSA.[9]  (See generally Petras Aff. Ex. 1 (PSA)).  Accordingly, Plaintiffs' breach of contract claim against Lennar fails as a matter of law and should be dismissed.  See, e.g., Becker, 2019 WL 7761728, at *4 (granting motion to dismiss breach of contract claim against defendant who was not party to the contract at issue).

Likewise, there can be no breach of contract claim when a contract does not contain a promise or provision that is claimed to be breached.  See Ferguson, 18 F. Supp. 3d at 731 (elements of breach of contract); see also Liberty Corp. Capital Ltd. v. Palmetto Bluff Shooting Club, LLC, C/A No. 9:19-cv-00521-SAL, 2021 WL 3828682, at *8 (D.S.C. Aug. 24, 2021) (citation omitted) ("If there is no obligation . . . , there can be no breach of the contract.").

Here, there is no provision in the PSA in which CalAtlantic promised to "furnish sets of plans and designs to Plaintiffs upon request," as alleged in the Complaint.  (Compl. ¶ 18(b)). Therefore, there are no grounds for Plaintiffs' breach of contract claim against CalAtlantic in this respect, and the Court should dismiss this claim.  See, e.g., Sports Med Props., LLC v. Talib, DOCKET NO. 3:19-cv-00082-FDW-DSC, 2019 WL 3403372, at *3–4 (W.D.N.C. July 26, 2019) (applying rule that on a motion to dismiss "court is not bound by parties interpretation of the contract and can instead review the document itself" and granting motion to dismiss breach of contract claim for failure "to identify the essential element of the cause of action—a breach"

---

[9] Although the Complaint alleges that "Lennar and CalAtlantic are so intertwined and intermingled in their corporate structures that they should be considered alter egos of each other, and not separate companies, for purposes of these claims," there are no well-pleaded facts to support this conclusory allegation.  To sufficiently plead a claim to pierce the corporate veil, a complaint must sufficiently plead:  (1) "factors [showing] whether corporate formalities were observed by the primary shareholders"; then (2) "whether it would be unjust not to pierce the corporate veil."  Becker, 2019 WL 7761728, at *4 (citing Sturkie v. Sifly, 313 S.E.2d 316, 317–19).  Here, Plaintiffs' conclusory statements fall short of establishing a basis to pierce the corporate veil.  Accordingly, there are no grounds to impose the alter ego doctrine on Defendants.  See Becker, 2019 WL 7761728, at *4 (rejecting Plaintiffs' "conclusory statements" that corporate entities were alter egos and should be disregarded and granting motion to dismiss breach of contract claim).

22

2:24-cv-02075-RMG     Date Filed 04/25/24     Entry Number 5-1     Page 30 of 32

because "[w]hile [plaintiff] . . . alleged facts supporting defects in Contractors' design and services in connection with the project, the Agreement does not impose liability on [defendant] for said defects"); <u>Palmetto Assisted Living Sys., Inc. v. KeyBank Nat'l Ass'n</u>, C/A No. 3:18-cv-2665-CMC, 2019 WL 1865351, at *2–5 (D.S.C. Apr. 25, 2019) (granting motion to dismiss breach of contract claim where breach alleged in complaint was not a breach of the terms of the contracts at issue).

  **2.**  **SCUTPA**

  SCUTPA prohibits "[u]nfair methods of competition and unfair or deceptive acts or practices in the conduct of any trade or commerce." S.C. Code § 39-5-20(a). To prevail on a SCUTPA claim, a plaintiff must demonstrate that: (1) the defendant "engaged in an unfair or deceptive act in the conduct of trade or commerce"; (2) the plaintiff suffered actual, ascertainable "monetary or property loss" as a result of the defendant's use of the unlawful trade practice; and (3) the unlawful trade practice "had an adverse impact on the public interest." <u>Havird Oil Co., Inc. v. Marathon Oil Co., Inc.</u>, 149 F.3d at 283, 291 (4th Cir. 1998) (citing S.C. Code § 39-5-140 and <u>Daisy Outdoor Advert. Co., Inc. v. Abbott</u>, 322 S.C. 489, 473 S.E.2d 47, 49 (S.C. 1996)).

  Plaintiffs' SCUTPA claim is so defective that it is also properly dismissed because the Complaint is devoid of any well-pleaded allegations showing an adverse impact on the public interest. To prevail on a SCUTPA claim, a plaintiff "must establish, <u>by specific facts</u>, that members of the public were adversely affected" by the defendant's action. <u>Williams v. Quest Diagnostics, Inc.</u>, 353 F. Supp. 3d 432, 450 (D.S.C. 2018) (emphasis added). The Complaint fails to do so. Indeed, there are no grounds for a SCUTPA claim here because "[a]n unfair or deceptive act or practice that affects only the parties to a trade or a commercial transaction is beyond [SCUTPA]'s embrace." <u>Ardis v. Cox</u>, 314 S.C. 512, 518–19, 431 S.E.2d 267, 271 (S.C. Ct. App.

23

1993) (citing Noack Enters., Inc. v. Country Corner Interiors, Inc., 290 S.C. 475, 351 S.E.2d 347 (S.C. Ct. App. 1986)).

Accordingly, Plaintiffs' SCUTPA claim should be dismissed. See, e.g., Weber v. Bank of Am. NA, C/A No. 0:13–cv–01999–JFA, 2013 WL 4820446, at *6 (D.S.C. Sept. 10, 2013) (alterations in original) (quoting Iqbal, 556 U.S. at 663) (granting motion to dismiss Plaintiffs' SCUTPA claim because their "allegation that [t]he conduct [of defendant] affects the public interest, can be and has been repeated on other members of the borrowing public is nothing more than 'threadbare recitals of a cause of action's elements, supported by mere conclusory statements'"); Ameristone Tile, LLC v. Ceramic Consulting Corp., Inc., 966 F. Supp. 2d 604, 621–22 (D.S.C. 2013) (granting motion to dismiss SCUTPA claim after concluding plaintiff "failed to allege facts to establish an adverse effect on the public interest sufficient to recover under the SCUTPA" with "conclusory statement" that "Defendants' acts have the potential for harmful effects to the public interest because they are capable of repetition"); Ethox Chem., LLC v. Coca-Cola Co., No. 6:12–cv–01682–TMC, 2013 WL 41001, at *3 (D.S.C. Jan. 3, 2013) (granting motion to dismiss SCUTPA claim with prejudice after concluding the complaint's allegations that "[t]h[e] case does not represent the first instance in which [defendant] has been accused of wrongdoing in unfair methods of competition and deceptive trade practices," "there is a legitimate threat that [defendant] will continue to engage in unfair trade practices and repeat its deceptive business practices," and "as a result, [defendant]'s actions adversely affect the public interest" were "conclusory," "without specific facts," and "not enough to survive [defendant]'s motion to dismiss"); Becker, 2019 WL 7761728, at *6–7 (granting motion to dismiss SCUTPA claim against defendant where complaint failed to establish "specific acts" by defendant that resulted in SCUTPA violation, the alleged wrongful acts affected only the parties to the commercial

24

transaction, and complaint failed to sufficiently allege misrepresentations by the defendant to the public at large).

## VI.     <u>CONCLUSION</u>

For the foregoing reasons, the Court should **GRANT** Defendants' motion and **STAY** the case pending Plaintiffs' compliance with the Right to Cure Act.  The Court should also **DISMISS** the case and **COMPEL** the parties to ADR so long as Plaintiffs have come into compliance with the Right to Cure Act.  Alternatively, the Court should **DISMISS** Plaintiffs' breach of contract claim against Lennar, Plaintiffs' breach of contract claim against CalAtlantic, and Plaintiffs' SCUTPA claim.

Respectfully submitted,

**MOORE & VAN ALLEN PLLC**


*s/ Christopher A. Ogiba*
Christopher A. Ogiba, D.S.C. No. 9042
Lauren N. Vriesinga, D.S.C. No. 12188
Daniel R. Fuerst, D.S.C. No. 12616
78 Wentworth Street
Charleston, SC 29401
(843) 579-7000
chrisogiba@mvalaw.com
laurenvriesinga@mvalaw.com
danielfuerst@mvalaw.com

*Attorneys for Defendants*

April 25, 2024
Charleston, South Carolina

25